UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SUZETTE BOLE     Plaintiff

v.     Civil Action No. 3:24-cv-51-RGJ

OLDHAM COUNTY BOARD OF EDUCATION     Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Oldham County Board of Education (the "Board") moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). [DE 11]. Plaintiff Suzette Bole ("Bole") responded, and the Board replied. [DE 12; DE 13]. This motion is ripe. For the reasons explained below, the Board's motion to dismiss is **GRANTED**.

### I.    BACKGROUND

Bole is the parent of a child who attends public school in Oldham County, Kentucky. [DE 10 at 49–50, ¶¶ 2, 19]. According to the Amended Complaint, Bole "signed up to speak at the [Board's] April 24, 2023 meeting."[1] [*Id.* at 50, ¶ 18]. Bole intended to "read a note that her daughter wrote in support of a teacher . . . who was being terminated." [*Id.* at 50, ¶ 19]. She wanted to "speak negatively about the Board's actions or inactions in this termination" and more broadly "about the Board and its members." [*Id.* at 50, ¶¶ 20–21]. She also "wanted to speak

---

[1] This meeting can be viewed online. *See* Oldham County Schools, OCBE Meeting April 24, 2023, YOUTUBE (Apr. 26, 2023), https://www.youtube.com/watch?v=cM8vcmamVdQ ("April 24, 2023 Board Meeting"). Because this video is incorporated into the Amended Complaint by reference, [*see* DE 10 at 51 n. 1], the Court may consider it without converting the Rule 12(b)(6) motion to a motion for summary judgment under Rule 56. *See Lockhart v. Garzella*, No. 3:19-CV-00405, 2022 WL 1046766, at *8 (S.D. Ohio Apr. 7, 2022) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) ("[I]n ruling on a motion to dismiss, the Court may consider 'the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.'").

1

about the Board's processes." [*Id.* at 50, ¶ 22]. Bole alleges that the Board's chairperson, Suzanne Hudley ("Hudley"), "interrupted her and refused to allow her to speak" as soon as she began her comments at the Board's April 24, 2023 meeting. [*Id.* at 51, ¶ 23]. At the beginning of the public comment period, Hudley explained that the Board does not discuss personnel during open board meetings. [*Id.* at 51, ¶ 28; April 24, 2023 Board Meeting at 01:08:59–01:09:21]. Hudley explained that discussion of personnel should happen privately, not at the public meetings, and that the Board does not allow members of the public to speak about personnel matters. [*Id.* at 51, ¶¶ 24–25]. She emphasized the Board lacks power over such matters. [April 24, 2023 Board Meeting at 01:09:21–01:09:32].

Bole asserts that Hudley invented this rule for the purpose of this meeting after reviewing the topics for the meeting; no such rule exists in the Board's public participation policy; and at least two discussion topics at previous Board meetings were inconsistent with this alleged rule. [*Id.* at 51, ¶¶ 26–45]. She states that the Board "did not reference any policy concerning speech regarding personnel during its previous meetings" on January 23, 2023, February 27, 2023, or March 27, 2023. [*Id.* at 52, ¶ 44]. In sum, Bole alleges the Board "fabricated a non-existent policy to silence [her] because it did not want to hear what she had to say." [*Id.* at 10, ¶ 53]. Bole also alleges that the Board's policy "allows the public to speak about some off agenda items but not others." [*Id.* at 50, ¶¶ 14–16].

The Board's relevant policy—attached as Exhibit A to the Amended Complaint—contains the following provisions regarding "Public Participation in Open Meetings."

> 3. PUBLIC COMMENT PERIOD
> Each regular meeting shall include a public comment period of at least fifteen (15) minutes.  Any Board rules and policies regarding conduct during school board meetings shall apply during the public comment period.
>
> Individuals or groups should contact the Office of the Superintendent prior to the next scheduled meeting in order to be considered for inclusion on the agenda.
>
> Persons wishing to address the Board must first be recognized by the chairperson. Persons who wish to address an agenda item should seek recognition at the time the Board considers that particular item.  Persons who wish to address the Board on a nonagenda concern are asked to seek recognition from the Chairperson at the "Presentation" item on the agenda.
>
> 4. SPEAKERS
> The chairperson may require the name and address of the speaker.  The chairperson may rule on the relevance of the topic to the Board's agenda.  The chairperson may also establish time limits for speakers as may be required to maintain order and to ensure the expedient conduct of the Board's business.
>
> The Board as a whole shall have the final decision as to the appropriateness of all rulings.
>
> 5. NON-AGENDA ISSUES
> The Board will not take official action on non-agenda issues introduced by the public in the meeting at which they are first introduced.

[DE 10-1 at 59].  Bole's Amended Complaint[2] brings three claims against the Board: (Count 1) violation of First Amendment rights, pursuant to 42 U.S.C. § 1983; (Count 2)[3] a challenge to the Board's public participation policy as "void for vagueness"; and (Count 3) violation of rights under the Equal Protection Clause of the Fourteenth Amendment.  [DE 10 at 53–56].  The Board seeks dismissal of all three counts in its motion to dismiss the Amended Complaint under Rule 12(b)(6). [DE 11].

---

[2] The Board previously filed a motion to dismiss Bole's original complaint.  [DE 6].  But "Plaintiff's amended complaint supercedes [sic] the original complaint, thus making the motion to dismiss the original complaint moot." *Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)).

[3] The second and third counts in the Amended Complaint are both erroneously styled as "Count III." [DE 10 at 55–56].  The Court will refer to the second count as "Count 2" and the third count as "Count 3."

## II.     DISCUSSION

Rule 12(b)(6) instructs that a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### A. First Amendment Claim (Count 1)

The Board argues that Bole's First Amendment claim should be dismissed because Bole makes no factual allegations that (1) the Board engaged in viewpoint discrimination or (2) the Board's exclusion of Bole's speech was unreasonable given the purpose of the forum. [DE 11 at 65]. In response, Bole argues that (1) Bole's speech was not in an unprotected category and (2) the Board impermissibly invented an *ad hoc* rule to silence Bole's speech based on her viewpoint. [DE 12 at 88–92].

The parties agree that the public comment portion of the Board's meetings is a limited public forum. [DE 10 at 53, ¶ 51 ("The Board's public participation section of its meeting constitutes a limited public forum."); DE 11 at 65 ("[T]he Board reasonably excluded Bole's speech as outside the scope of the limited public forum.")]. This understanding comports with similar cases and controls the applicable constitutional standard. *See Moms for Liberty - Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, No. 3:23-CV-00211, 2024 WL 112839, at *3 (M.D. Tenn. Jan. 10, 2024) (citing *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)) ("The public-comment period of a school board meeting is a limited-public forum."); *Matwyuk v. Johnson*, 22 F. Supp. 3d 812, 824 (W.D. Mich. 2014) (citing *Miller v. City of Cincinnati*, 622 F.3d 524, 533–36 (6th Cir. 2010)) ("[T]he forum type generally determines the applicable constitutional standard.").

In a limited public forum, "a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009) (citing *Good News Club v. Milford Cent. School*, 533 U.S. 98, 106–07 (2001)); *see also Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019) ("In a limited public forum, the government can impose reasonable restrictions based on speech content, but it cannot

5

engage in viewpoint discrimination."). This requires exclusions of speech to be "reasonable in light of the purpose served by the forum," and recognizes a distinction between "content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations." *Youkhanna*, 934 F.3d at 519 (quoting *Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829–30 (1995)). Thus, if Bole does not allege sufficient facts to plausibly claim that excluding her speech was either (1) based on her viewpoint or (2) unreasonable, then this claim must be dismissed.

### i. Viewpoint Neutrality

The Board argues that Bole "fails to allege any facts suggesting that the Board excluded her comments on the basis of her viewpoint." [DE 11 at 68]. It points out that Bole makes several allegations regarding what viewpoint she *intended* to express, but that no facts in the Amended Complaint allege that the Board knew of Bole's viewpoint before excluding her speech. [*Id.*]. Instead, the Amended Complaint alleges that Hundley interrupted Bole "as soon as [she] began to speak." [*Id.* (quoting DE 10 at 51)]. In short, Bole said only enough to indicate the topic she intended to speak about to the Board—not her viewpoint on that topic—prior to being instructed that personnel matters were beyond the scope of the comment period. Bole's response to this argument is unavailing.

Bole first argues that her speech was protected because she "wanted to discuss matters of public concern" and was "neither obscene nor violent," leaning heavily on *Moore v. City of Harrodsburg*, No. CV 5:22-164-DCR, 2023 WL 3794498 (E.D. Ky. June 2, 2023). But the mere fact that Bole's speech did not fall into an unprotected category of speech does not mean that her speech at the Board meeting—a limited public forum—could not be curtailed in any way. *See*

6

*Moore*, 2023 WL 3794498, at *4 (explaining that "[i]n the context of a limited public forum, the government enjoys even more leeway to restrict speech than in traditional or designated public forums" and "[c]ontent-based restrictions are permissible in a limited public forum") (citations omitted).

Bole then asserts that the Board "arbitrarily create[d] an *ad hoc* rule to interfere with viewpoints . . . [it] did not want to hear." [DE 12 at 92]. Again, Bole cites heavily to *Moore* which she says held "that a non-existent rule, arbitrarily created to restrain critical viewpoints, was not reasonable under the circumstances." [*Id.*]. The source of the alleged rule—that the Board does "not talk about or discuss certain personnel during open Board meetings" [April 24, 2023 Meeting at 01:08:59–01:09:21]—is viewpoint neutral. Bole herself alleges in her Amended Complaint that "[p]rohibiting an individual from discussing the termination of an employee is *content-based* discrimination because it prohibits subject matter." [DE 10 at 53, ¶ 54 (emphasis added)]; *see also Moore*, 2023 WL 3794498, at *4 ("Prohibiting an individual from discussing employment or termination is *content-based* discrimination because it prohibits subject matter, *i.e.*, the subject of work or firing.") (emphasis added). And Bole also alleges that the Board explained that it does not discuss personnel issues at meetings after previewing the *topics* for the April 24, 2023 meeting, not after learning of Bole's viewpoint. [DE 10 at 51, ¶¶ 29–30].

In *Moore*, the court explained that even though "[e]mployment is a subject matter," the restriction was based on viewpoint because the Harrodsburg city council had notice that the plaintiff intended to express his "dissatisfaction towards Harrodsburg Commissioners regarding his termination when he referred to them as 'Larry, Curly, and Moe,' and allegedly indicated that he 'wanted answers' from 'the three stooges.'" 2023 WL 3794498, at *5. The clerk in *Moore* also worried that the plaintiff would cause disruption and be confrontational. *Id.* Unlike the plaintiff

7

in *Moore*, Bole makes no plausible allegation that the Board had any notice of what viewpoint she held or intended to express. Rather, taking Bole's alleged facts as true, the complaint only alleges that the Board enforced a content-based restriction in response to the topic Bole raised—a type of restriction *Moore* explained was appropriate. *Id.* at *4 (citing *Youkhanna*, 934 F.3d at 519). As a result, Bole alleges no facts supporting her assertion that the Board restricted her speech based on viewpoint.

### ii. Reasonableness

The Board argues that Bole "makes no allegation that her proposed comments were relevant to the Board's agenda," and that it was reasonable to exclude comments on personnel matters because the Board does not have any say over them but is prohibited "by statute and oath" from involving itself in them. [DE 11 at 69–70]. As discussed above, Bole responds that the *ad hoc* nature of the rule makes it unreasonable. [DE 12 at 92]. Bole also alleges that the Board has previously allowed others to speak on personnel matters at Board meetings and that personnel decisions are within the Board's purview because it is their job to supervise the superintendent. [*Id.* at 91–92]. In its reply, the Board asserts that (1) the fact that the superintendent is "charged with making personnel termination decisions" does not bring these decisions within the purview of the Board or its meetings and (2) the fact that a matter involves or affects an employee does not make it an ongoing "personnel" matter. [DE 13 at 101–04]. As a result, according to the Board, Bole has not plausibly alleged that the Board policy was unreasonable.

First, it is true that Bole makes no allegations that her comments were relevant to the purpose of the Board meeting. The Board is correct that Bole conflates individual personnel matters with the district's broader policy agenda. Bole alleges that she sought to speak about a teacher "who was being terminated." [DE 10 at 50]. As the Board correctly points out, she does

not allege that she "sought to discuss her opinion about the Superintendent's performance of his own duties." [DE 13 at 102]. Similarly, Bole does not allege that she sought to speak about policies affecting teachers more generally, such as salary schedules, the creation or elimination of a teaching position, or the establishment of teacher qualifications and job duties. [*Id.* at 102–03]. Instead, Bole alleges that she sought to speak about an individual personnel issue—the termination of a specific teacher.[4] The mere fact that the superintendent—who *does* have the authority to make personnel decisions—is supervised by the Board does not bring his responsibilities under the Board's purview.

In addition, the Board asserts that specific personnel matters are not relevant to *any* Board meeting because the Board is prohibited from influencing those decisions. [DE 13 at 103 (citing KRS 160.180(3) (a board member is subject to removal from office "if he attempts to influence the hiring of any school employee, except the superintendent of schools or school board attorney")); KRS 160.170 (board members must swear not to influence the hiring or appointment of any district employees, except the superintendent and school board attorney)]. Because the

---

[4] While certainly not controlling, the Board cites to an article published by the Kentucky School Board Association which explains this distinction.

> School boards are prohibited from influencing who is hired, transferred, non-renewed, etc. An attempt by a board member to influence the hiring of any school employee can lead to disqualification from the school board.
>
> They should also not limit or attempt to limit the superintendent's discretion in personnel matters. However, the board does play an overarching role.
>
> The board sets the district's budget, which impacts personnel. It can create or abolish positions within the district. The board also establishes qualifications, duties, and compensation for positions in the district.
>
> In addition, the board approves the employee evaluation system to be used within the district and adopts personnel policies pertaining to work hours, benefits, disciplinary matters and due process.

[DE 102 (quoting Matt McCarty, *School board members have very limited role in personnel matters*, KENTUCKY SCHOOL BOARDS ASSOCIATION (March 2017), https://www.ksba.org/Boardmembersrolein personnel.aspx) (emphasis omitted)].

Board is obligated to abide by these limitations, it could have properly determined that Bole's comments were not relevant to the meeting during the public comment period. *See Youkhanna*, 934 F.3d at 519 ("We can think of no content-based restriction more reasonable than asking that content be relevant."); *Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*, 92 F. App'x 279, 282 (6th Cir. 2004) (explaining a school board "may confine its meeting to specified subject matter").

Second, the fact that the restriction on public comment about personnel matters was given orally and not contained within a written policy its reasonableness for the purpose of Bole's first claim. The Board has power to limit discussion within the limited public forum of its meetings regardless of whether its limitations are written down or given orally, so long as they are reasonable and viewpoint neutral. *See Youkhanna*, 934 F.3d at 519 (holding that mayor's "preliminary oral admonition" was "reiterating the relevance rule"). Bole again cites only *Moore* for the proposition that restricting speech on certain topics is unreasonable if there is no written, formal rule restricting it. [DE 12 at 90]. But, while the restriction in *Moore* was given orally, the court did not rely on that fact in finding it was unreasonable. 2023 WL 3794498, at *5. The court in *Moore* held that "[r]estricting speech regarding past employment during a city meeting may be 'reasonable in light of the purpose served by the forum' under different circumstances," but that the city "used unreasonable means to achieve that end." *Id.* The plaintiff in *Moore* spoke during the "Welcome Guests" portion of the city meeting, and "[t]here were also no guidelines or topic restrictions, and individuals could speak repetitively month after month without a time limit." *Id.*

In this case, however, there are "different circumstances" because the Board did not limit Bole in order to "restrict speech to pertinent city business or to promote efficiency," as the court assumed the city did in *Moore*. *Id.* Instead, the Board limited speech about personnel matters

10

because, as it correctly points out, Board members are "*prohibited*—by statute and oath—from becoming involved in specific personnel matters (except for those relating to the superintendent or school board attorney)." [DE 11 at 70 (citing KRS 160.170) (emphasis in original)]. Therefore, Bole has not plausibly alleged that issuing the limitation orally rendered it unreasonable. *See Miller*, 622 F.3d at 535 (quoting *Good News Club*, 533 U.S. at 106–07) (government can limit speech so long as "reasonable in light of the purpose served by the forum"); *Freedom from Religion Found., Inc. v. City of Warren*, 873 F. Supp. 2d 850, 863 (E.D. Mich. 2012) (citing *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974)) ("[A] speaker may properly be excluded from a limited public forum because he wishes to address a topic not encompassed within the purpose of the forum.").

Taking all of Bole's factual allegations as true, she has not plausibly stated a claim that the Board's restriction of her speech in a limited-public forum was either (1) based on viewpoint or (2) unreasonable. As a result, the Board's Motion to Dismiss Count 1 is **GRANTED**.

### B. Vagueness Challenge (Count 2)

The void-for-vagueness doctrine—rooted in the Fifth and Fourteenth Amendments—recognizes and protects two fundamental principles of due process: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Ison v. Madison Loc. Sch. Bd.*, 395 F. Supp. 3d 923, 936 (S.D. Ohio 2019) (quoting *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). In general, "[c]ivil laws are held to a less strict vagueness standard than criminal laws 'because the consequences of imprecision are qualitatively less severe.'" *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 358–59 (6th Cir. 1998) (quoting *Vill. of Hoffman Estates v. Flipside,*

*Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)). But "[w]hen speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox Television Stations*, 567 U.S. at 253–54; *see also Flipside,* 455 U.S. at 498–99 ("The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment . . . [i]f, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.").

A rule or policy is void for vagueness "if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion." *United Food,* 163 F.3d at 358–59 (6th Cir. 1998) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "[A] statute or ordinance offends the First Amendment when it grants a public official 'unbridled discretion' such that the official's decision to limit speech is not constrained by objective criteria, but may rest on 'ambiguous and subjective reasons.'" *Id.* at 359 (quoting *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996)). "But perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)) (internal quotation marks omitted). In other words, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'" *California Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)); *see also Grayned*, 408 U.S. at 110 ("Condemned to the use of words, we can never expect mathematical certainty from our language.").

### i. Facial Challenge

Bole brings both a facial and as-applied challenge.[5] [DE 10 at 55, ¶ 68]. As to Bole's facial challenge, the Board argues that it fails because (1) Bole's comment was "clearly proscribed" by the Board's relevancy policy, and (2) Bole "has failed to allege that the Board's policies will chill a *substantial* amount of legitimate (on-topic) speech or are devoid of any standard of conduct at all." [DE 11 at 73 (emphasis added)]; *see Holder*, 561 U.S. at 20 ("[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim[.]"); *Carey v. Wolnitzek*, No. CIV.A. 3:06-36-KKC, 2012 WL 4597236, at *5 (E.D. Ky. Sept. 29, 2012) (quoting *California Tchrs. Ass'n*, 271 F.3d at 1152) ("The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether *some* amount of legitimate speech will be chilled; it is whether *a substantial* amount of legitimate speech will be chilled.").

The Board is correct that Bole does not allege that a substantial amount of legitimate speech will be chilled by the Board's policy. The policy also clearly allows for the Board to "rule on the relevance of the topic to the Board's agenda." [DE 10-1 at 59]. Relevance is at least "an imprecise by comprehensible normative standard," not "no standard . . . at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). And the Sixth Circuit has recognized "that the moderator [must] exercise some discretion" in the context of school board meetings. *Lowery*, 586 F.3d at 436 (noting

---

[5] In the context of summary judgment, there is a preference toward addressing as-applied challenges before facial challenges so that facial attacks are not addressed unnecessarily, discouraging gratuitous attacks upon laws. *See Connection Distribg. Co. v. Holder*, 557 F.3d 321, 327–28 (6th Cir. 2009) ("The usual judicial practice is to address an as-applied challenge before a facial challenge because it generally will be more efficient because this sequencing decreases the odds that facial attacks will be addressed unnecessarily" (quoting *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989) (cleaned up)). At the same time, some courts address a facial challenge first because if a court finds a challenged regulation is facially unconstitutional, it need not address any additional as-applied challenge. *See Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 291 (6th Cir. 2018). Regardless, at this stage of the litigation, the Court is ruling on a motion to dismiss, and in doing so must determine whether Bole has plausibly stated a claim for a facial challenge and whether Bole has plausibly stated a claim for an as-applied challenge. The Court must address both claims and the order in which it does so is less important.

13

that "Courts have upheld removals from public meetings where there appears to have been no written policy at all" in certain circumstances); *see also Youkhana*, 934 F.3d at 519 ("We can think of no content-based restriction more reasonable than asking that content be relevant."); *Ison*, 395 F. Supp. 3d at 936–37 (school boards exercising discretion in enforcing their policies at meetings is "unavoidable").

The policy permits the Board to make relevancy determinations and it "expressly allow[s] for the public to address the Board about non-agenda concerns." [DE 12 at 94]. Bole highlights the policy language stating that "Persons who wish to address the Board on a non-agenda concern are asked to seek recognition from the Chairperson at the 'Presentation' item on the agenda" and "The Board will not take official action on non-agenda issues introduced by the public in the meeting at which they are first introduced." [*Id.*; DE 10-1 at 59]. At bottom, Bole argues that the policy gives the Board discretion to select when to allow speech as a "non-agenda concern" and when to exclude it as not relevant "to the Board's agenda." [DE 10-1]. But this does not render the policy contradictory or impermissible. Boards cannot be expected to anticipate every detail of what will and what will not be allowed at meetings. *Lowery*, 586 F.3d at 436. Boards may exercise reasonable discretion in assessing which topics are relevant or permitted in the limited public forum and which will be excluded. *Id*. And the Sixth Circuit has stated there is "no content-based restriction more reasonable than asking that content be relevant." *Youkhanna*, 934 F.3d at 519. Further, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *Holder*, 561 U.S. at 19 (2010). Applying these principles to the allegations of this case, Bole fails to plausibly allege a claim for facial challenge. The Board's motion as to Bole's facial challenge is **GRANTED**.

### ii. As-Applied Challenge

In contrast to a facial challenge, an as-applied challenge "argues that a law is unconstitutional as enforced against the plaintiffs before the court." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013). In such a challenge, the "analysis must turn on the 'particular facts at issue, for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Meriwether*, 992 F.3d at 518 (*Holder*, 561 U.S. at 20). Here, the Board argues that Bole had notice that her speech was prohibited when the Board clarified its policy at the April 24, 2023 meeting as it applied to discussing personnel matters. At the meeting, the Board (via Hudley) explained:

> Looking over the topics for public expression tonight, I do want to remind everyone that we do not talk about or discuss certain personnel during open Board meetings. If you have a concern about a particular person that works for our district, the proper place to take that is to the principal of your school or to [the Superintendent]. The Board does not have any say over personnel issues, other than the Superintendent, so I just want to remind everyone of that before we get started.

[April 24, 2023 Meeting at 01:08:56–01:09:31]. Thus, the Board argues that it clarified that discussion of personnel was subject to a relevancy determination and explained that personnel issues were *never* relevant to the purpose of the Board's limited public forum and should always be brought to school administrators instead. [DE 11 at 75]. It argues that Bole "does not allege that the Board Chairperson's clarification of the Policy was vague[.]" [DE 11 at 75]. Other cases—both in this circuit and others—have relied on a subsequent clarification of a rule by the governing body that promulgates it in their analysis of whether a plaintiff has notice or not. *See*, *e.g.*, *Meriwether* 992 F.3d at 518 (holding plaintiff "had notice that the policy prohibited his conduct" where plaintiff "asked the university administrators for guidance, [and] they ultimately told him he had to use Doe's preferred pronouns"); *Brokamp v. James*, 66 F.4th 374, 405 (2d Cir.

15

2023) (explaining plaintiff "had notice that her practice constituted 'mental health counseling' when the N.Y. Board confirmed as much to her via email").

The Board's determination that Bole's comments about specific personnel were not relevant to an agenda item did not rely on any vague language contained in the policy—it clearly allows for relevance determinations. And the Board's explanation of that rule's application at the April 24, 2023 was clear enough. As a result, Bole fails to state a plausible claim that the Board's policy allows it to "act in an arbitrary or discriminatory way," *Ison*, 395 F. Supp. 3d at 936 (quoting *Fox Television Stations*, 567 U.S. at 253 (2012)), by giving it "unbridled discretion" to determine when a speaker's comments must relate to a Board agenda item and when they may not. *United Food*, 163 F.3d at 358–59 (quoting *Desert Outdoor Advertising*, 103 F.3d at 818). Thus, the Board's motion as to Bole's as-applied challenge is **GRANTED**.

### C. Equal Protection Claim (Count 3)

The Board first argues that Bole's equal protection claim must fail "as a matter of law" because it "impermissibly repackages a [First] Amendment claim as a 'class of one' claim under the Fourteenth Amendment." [DE 11 at 76 (quoting *Walker v. Baker*, No. 23-1232, 2023 U.S. App. LEXIS 25579, at *4 (6th Cir. Sep. 27, 2023))]. Bole never addresses this argument in her response. It is true that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment . . . must be the guide for analyzing these claims.'" *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Walker*, 2023 U.S. App. LEXIS 25579, at *5 (same). Because the First Amendment, not the Fourteenth Amendment, is the "primary source of substantive protection" from government curtailment of speech, Bole's

16

invocation of Fourteenth Amendment rights is "unavailing." *Dodson*, 304 F. App'x at 438; *Walker*, 2023 U.S. App. LEXIS 25579, at *5.

Even if Bole's Fourteenth Amendment claim were not better characterized as a First Amendment claim, she still has not plausibly stated an equal protection claim. A "class-of-one claim" would arise here if Bole alleged the Board "intentionally treated [her] differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023) (citing *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) and *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012)). Bole does not plausibly allege that similarly situated individuals were allowed to speak about personnel issues. As the Board argues, both of Bole's cited examples of members of the public speaking during previous meetings are distinguishable from Bole because they were not speaking squarely to personnel matters—a subject the Board is expressly prohibited from involving itself in. *See* KRS 160.180(3). In the Amended Complaint, Bole puts forth the following examples:

> 32.  The Board did not have this personal [sic] rule at its January 23, 2023, February 27, 2023, or March 27, 2023 meeting.
>
> 33.  In fact, The Board had allowed members of the public to speak about district personnel in previous meetings.
>
> 34.  For example, on February 27, 2023, the board allowed a bus driver to speak about complications with his job.
>
> 35.  In addition, the Board allowed the bus driver to speak about how certain incidents were handled by other employees of the district.
>
> 36.  Thus, the Board allowed the bus driver to speak about personal [sic] issues.
>
> 37.  In addition, On March 27, 2023, the Board allowed a student to discuss how Ms. Foster is a good teacher.

17

      38.      The Board did not object to or block this student from speaking good about a teacher.

      39.      The Board did not fabricate a rule at the beginning of its meeting to silence this speaker.

      40.      Simply, the Board allowed a student to speak on personal [sic] matters.

[DE 10 at 51–52, ¶¶ 32–40].[6] The Board argues that none of these instances constitute "similarly situated persons," [DE 11 at 78], and Bole responds that the Board "split[s] distinctions without a difference." [DE 12 at 91].

As already discussed above, the Board argues that "Kentucky law draws a critical distinction between matters related to employees generally, such as the creation of positions or setting the salary schedule . . . and the hiring, non-renewal, or termination of *individual employees*[.]" [DE 102–03 (italics in original)]. Bole alleges that her comments related to the termination of an individual employee, [DE 10 at 55–56], but the speakers at the February 27, 2023 meeting and March 27, 2023 did not. As a result, they were not similarly situated. As the Board argues, the bus driver who spoke at the February 27, 2023 meeting made comments about a district policy that "purportedly negatively affected bus drivers' pay on field trip days," which is not a personnel matter. [DE 11 at 78 (citing February 27, 2023 Board Meeting at 01:55:40–02:00:16)]. Additionally, the Board asserts that the student who spoke at the March 27, 2023 meeting made comments about "a decision to eliminate the choir teacher position" at a high school,

---

[6] Bole cites the publicly available recordings of these meetings on YouTube. [DE 10 at 51–52, n. 2–4]; *see* Oldham County Schools, OCBE Meeting February 27, 2023, YOUTUBE (Mar. 1, 2023), https://www.youtube.com/watch?v=EMv1RBfHaj8 at 01:55:40–02:00:16 ("February 27, 2023 Board Meeting"); Oldham County Schools, OCBE Meeting March 27, 2023, YOUTUBE (Mar. 28, 2023), https://www.youtube.com/watch?v=HnI_9gL-Dls at 01:06:45–1:09:29 ("March 27, 2023 Board Meeting"). Because they are incorporated into the Amended Complaint by reference, [*see* DE 10 at 51–52 n. 3, 4, 6, 7], the Court may consider them without converting the 12(b)(6) motion to a motion for summary judgment under Rule 56. *See Lockhart*, 2022 WL 1046766, at *8 (quoting *Bassett*, 528 F.3d at 430).

not a personnel matter. [*Id.* at 79 (citing March 27, 2023 Board Meeting at 01:06:45–1:09:29)]. The Court agrees that, because these speakers did not also address a personnel matter, they were not similarly situated to Bole. Therefore, even if Bole's equal protection claim was not better characterized as a First Amendment claim, accepting all of Bole's factual allegations as true, she has still failed to plausibly state a claim. As a result, the motion to dismiss Count 3 is **GRANTED.**

### III.  CONCLUSION

For the reasons explained, and the Court being otherwise sufficiently advised, the Board's motion to dismiss the Amended Complaint is **GRANTED.** The Court will enter a separate Judgment in accordance with this Memorandum Opinion and Order.

Rebecca Grady Jennings, District Judge
United States District Court

September 11, 2024

cc: counsel of record